UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

     v.

DARRYL PAUL a/k/a DARRYL LAMONT,

       Defendant.

25-MR-176-LJV
DECISION & ORDER

---

     A criminal complaint has charged the defendant, Darryl Paul, with attempted sex trafficking by force, fraud, and coercion (count 1) and possessing cocaine with the intent to distribute it (count 2).  Case No. 25-mj-1244, Docket Item 1.  In March of this year, United States Magistrate Judge Jeremiah J. McCarthy held a detention hearing and, after acknowledging that it was "a close question," ordered Paul released on strict conditions.  Docket Item 12 at 19-20; *see* Case No. 25-mj-1244, Docket Items 5 and 8.  Those conditions included a $100,000 property bond executed by Paul's mother; home incarceration at his mother's residence; custodial supervision by his mother; G.P.S. monitoring; computer/internet monitoring; phone use limited to a Jitterbug phone; and avoidance of all contact, directly or indirectly, with any alleged victim or potential witness in the subject investigation or prosecution.  *See* Case No. 25-mj-1244, Docket Item 12 at 21.

     Judge McCarthy stayed his order of release until 12:00 p.m. on April 9, 2025, to allow the government to appeal to this Court.  *See* Case No. 25-mj-1244, Docket Item 8.  This Court set a briefing schedule and extended the stay until April 11, 2025.  Docket

Item 3.[1]  On April 11, this Court heard oral argument, ordered supplemental briefing, and extended the stay of Judge McCarthy's release order until further order of this Court.  *See* Docket Item 7.  The parties then submitted their supplemental briefs, Docket Items 8 and 11, and the Court took the matter under advisement.

This Court agrees with Judge McCarthy that this case presents a close call.  But after careful consideration, this Court finds that Paul has not shown by a preponderance of the evidence that there are conditions that can effectively mitigate the danger he poses.  For that reason, this Court respectfully disagrees with Judge McCarthy and revokes his release order.

## LEGAL PRINCIPLES

### I.    REVIEW OF A DETENTION ORDER

"In reviewing a detention order of a magistrate judge, a district judge should not simply defer to the judgment of the magistrate judge, but rather must reach [his or] her own independent conclusions."  *United States v. Enix*, 209 F. Supp. 3d 557, 563–64 (W.D.N.Y. 2016) (citing *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985)).  When conducting this "de novo review, the district court may rely on the record of the proceedings before the magistrate judge and may also accept additional evidence."  *Id.* at 564 (quoting *United States v. Marra*, 165 F. Supp. 2d 478, 481 (W.D.N.Y. 2001)).

_____

[1] Unless otherwise noted, docket citations are to the docket in this matter, 25-mr-176, and page numbers in docket citations refer to ECF pagination.

## II.    PRETRIAL DETENTION

"If, after a hearing [under 18 U.S.C. § 3142(f)], the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community, such judicial officer shall order the detention of the [defendant] before trial."  18 U.S.C. § 3142(e)(1).  "The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—

> (1) the nature and circumstances of the offense charged . . . ;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including—
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

*Id.* § 3142(g).

Judicial findings under the statute require different standards of proof.  A finding that no condition or combination of conditions will reasonably assure the safety of any other person and the community must be supported by clear and convincing evidence; on the other hand, a finding that a defendant poses a risk of flight need be supported only by a preponderance of the evidence.  *See United States v. English*, 629 F.3d 311, 319 (2d Cir. 2011).  But the court's findings need not be supported by testimony under

oath, as "[i]t is well established in [the Second Circuit] that proffers are permissible both in the bail determination and bail revocation contexts."  *United States v. LaFontaine*, 210 F.3d 125, 131 (2d Cir. 2000).

Here, the criminal complaint charges Paul with "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act," 18 U.S.C. § 3142(e)(3)(A), as well as "an offense under 18 U.S.C. § 1591, where the maximum term of imprisonment is 20 years or more."  Docket Item 4 at 5; *see* Case No. 25-mj-1244, Docket Item 1.  Therefore, there is a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of the community."  *See* 18 U.S.C. § 3142(e)(3).[2]  As the Second Circuit has explained, "[w]here there is such a presumption, the defendant 'bears a limited burden of production—not a burden of persuasion—to rebut that presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight.'"  *English*, 629 F.3d at 319 (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)).

 "Satisfying the burden of production does not eliminate the presumption favoring detention," however.  *Id.*  Instead, the presumption "remains a factor to be considered among those weighed by the district court."  *Id.* (quoting *Mercedes,* 254 F.3d at 436). Nevertheless, "[a]t all times . . . 'the government retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community,' and 'by the lesser standard of a preponderance of the evidence that the defendant presents a risk of flight.'"  *Id.* (quoting *Mercedes,* 254 F.3d at 436).

---

[2] Either of these two statutory prerequisites gives rise to the presumption.

**DISCUSSION**[3]

## I.   *UNITED STATES V. FOX*

As this Court observed at oral argument, the difficult issue at bar is in many ways similar to one in a case over which this Court presided several years ago: *United States v. Fox*, 602 F. Supp. 3d 434 (W.D.N.Y. 2022).  In that case, the defendant faced charges that involved "trading drugs for sex that included violence," but this Court nevertheless released him on strict conditions.  *Id.* at 436.  More specifically, the Court found that despite the horrific allegations about Fox's past conduct, the Court "simply [could ]not find with the required 'high degree of certainty' that Fox w[ould] engage in any drug activity or solicitation of escorts while all his electronic devices [we]re monitored, he [wa]s confined to his parents' home and in his father's custody, and there [wa]s a camera with a live feed available to the government and the Probation Office documenting anyone who comes into or out of the house."  *Id.* (quoting *United States v. Enix*, 209 F. Supp. 3d 557, 563 (W.D.N.Y. 2016)).  After agreeing with this Court that the case presented "an extremely close call," the Second Circuit affirmed.  *United States v. Fox*, 2022 WL 2564600, at *3 (2d Cir. July 8, 2022).

Here, as in *Fox*, the allegations are deeply disturbing.  But this Court must "cast aside visceral reactions and personal opinions and . . . focus instead on the only questions that matter in the context of the government's motion for detention: (1) Does clear and convincing evidence demonstrate that no condition or combination of conditions will reasonably assure the safety of any other person and the community and

---

[3] This Court assumes the reader's familiarity with the factual background of this case and will refer only to those facts necessary to explain its decision.

(2) does a preponderance of the evidence establish that no condition or combination of conditions will reasonably assure the defendant's appearance?"  *See Fox*, 602 F. Supp. 3d at 436.  And this Court has done just that.  For the reasons that follow, however, the Court finds that the government's proffer of evidence establishing a serious risk of potential witness intimidation—evidence that was absent in *Fox*—constitutes clear and convincing evidence that there are no conditions or combination of conditions that will reasonably assure the safety of the community.  So for that reason, this Court revokes Judge McCarthy's release order.

## II.    18 U.S.C. § 3142(G) FACTORS

### A.    Nature and Circumstances of the Charged Offense

There is no question that Paul has been charged with serious drug and sex-trafficking offenses. The criminal complaint charges Paul not only with possessing cocaine with the intent to distribute it—a serious offense in and of itself—but with attempted sex trafficking by force, fraud, and coercion in connection with the drug crime. *See* Case No. 25-mj-1244, Docket Item 1.  Indeed, the government says that Paul coerced women to perform sex acts for money by, among other things, "preying on [their] youth and lack of financial stability," "employing psychological manipulation to induce fear and emphasizing the power imbalance," and "providing and forcing [them] to drink alcohol and do cocaine."  *Id.* at 8.  The nature and circumstances of the offense charged therefore weigh against release.

### B.    Weight of the Evidence

The weight of the evidence weighs against release as well.  Among other things, the government has proffered that seven women have come forward saying that they

were coerced into performing sex acts for money.  Docket Item 4 at 9.  Five of those women allegedly have stated that Paul "drugged and raped them."  *Id.*  And the government has proffered that in a post-arrest statement Paul admitted that he possessed cocaine and distributed it to others.  *Id.* at 8.

Indeed, Paul implicitly concedes that the government has significant evidence, including having found "cocaine, fentanyl strips, Narcan[,] and sex toys."  Docket Item 5 at 2 (citing Docket Item 4 at 7).  But Paul still argues that there are conditions that can address his alleged dangerousness.  *See id.* (arguing that "Paul will be subject to drug testing, any illegal drug use will be detected, violated, and result in re-detention" and "Paul's access to individuals will be restricted, so that kind of 'recreation' will not be possible").  The Court will address potential conditions below, *see infra* at 8-10, but the weight of the evidence favors detention as well.

### C.   History and Characteristics of the Defendant

The government argues that Paul's "criminal history supports detention" because he was convicted of wire fraud in 1995 and then violated his supervised release in 1997.  Docket Item 4 at 16.  The government also notes that Paul "has been the subject of several police reports alleging that he was harassing women who worked [for] him," *id.*, and asserts that his "history of mental health issues and use of cocaine in response [likewise] supports detention," *id.* at 17.

Paul counters that he "is 90% disabled, [and] suffers from sleep apnea, asthma and diabetes," which he says gives him added incentive not to violate any conditions of release.  Docket Item 5 at 7.  Paul also cites his family ties, including with his mother who has offered to put up her home as a surety.  *Id.*

7

Although Paul does have some criminal history, his convictions are three decades old.  And as Paul observes, the more recent police reports did not result in any convictions.  Moreover, he has family ties, and this Court agrees that his medical conditions give him added incentive not to violate any conditions of release.  On balance, this Court finds that this factor weighs slightly in Paul's favor.

### D. Nature and Seriousness of the Danger Posed to any Person or the Community

Last, but certainly not least, is the nature and seriousness of the danger Paul poses to any person or the community.  As this Court stated at oral argument, there is little question that Paul poses a danger based on the charges and the weight of the evidence.  The harder question is whether that danger can be mitigated with conditions.

This Court agrees with Paul that the danger that he will engage in sex trafficking while under strict conditions is relatively low.  *See* Docket Item 5 at 2.  He no longer runs the business through which he is alleged to have conducted his sex trafficking operation, and he would be under home incarceration at his mother's home.  But as the government observed at oral argument, there is another concern here: potential witness tampering.

The government cites the following evidence as demonstrating the risk of Paul's attempting to intimidate witnesses:

- Text messages between Paul and an employee in which the employee said of another employee "[s]he's dead idc [I don't care] what you say I'm fucking her up she's dogged this company enough," to which Paul responded: "I'm with u on this," Docket Item 11 at 4;

8

- Text messages in which Paul said of an employee: "I [k]no[w] where each stag was, and I have there [sic] contact info . . . I can fuck her up with just that . . . so tell her to go back in her hole, and shut up," *id.;*

- Text messages that Paul sent about "Charm," an employee, suggesting that Paul was trying to pull strings with law enforcement to get back at her:

> I am already digging into charms ass,just met with Anthony today,I can add here to the list...and he is going around the  Detectives who don't wanna prosecute and going right to the DA because he was the ex prosecutor of Cheektowaga and he said he can do that...and pull her in court that way she gets Violated...she the one the said we were at war...game on Bitch

  [sic] *id.;*

- Text messages in which Paul texted an employee that he "want[ed] blood," *id.* at 6;

- Text messages in which Paul said that he had "talked to Chantell and she's 10 toes down"—in other words, loyal or committed*, id.* at 7.

Based on these text messages, the Court shares the government's concern that there is a significant risk of witness intimidation.  As noted above, that concern distinguishes this case from *Fox*.  And the government has persuaded this Court that even the proposed strict conditions would not sufficiently hamper Paul's ability to threaten or intimidate witnesses.

For example, as the government observed at oral argument, it would not be difficult for Paul to obtain and conceal an illicit cell phone or to borrow a friend's or family member's phone if he is released.  By contrast, if he is detained, Paul's phone calls will be monitored, and it will be much more difficult for him to access an

unmonitored phone.  So even if Paul is confined at home under strict conditions, that would not be sufficient to ameliorate the risk of witness intimidation.

For all those reasons, this Court finds that the final factor—the nature and seriousness of the danger Paul poses to any person or the community—weighs in favor of detention.  And the Court further finds that there is no condition or combination of condition that can effectively mitigate that danger.

## CONCLUSION

In sum, this Court finds that the government has sustained its burden of establishing by clear and convincing evidence that Paul poses a danger to other persons and the community and that no condition or combination of conditions can reasonably assure the safety of those persons and the community.  As a result, this Court revokes Judge McCarthy's release order.


SO ORDERED.

Dated:   May 27, 2025
         Buffalo, New York


_/s/ Lawrence J. Vilardo_
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE